## N., C. & ST. RAILWAY v. J. L. MAYO.

Western Section. May 28, 1931.

Petition for Certiorari denied by Supreme Court, December 19, 1931.

Frank Slemons, of Nashville, John R. Bond, of Brownsville, and Francis B. Moorman, of Somerville, for plaintiff in error.

C. A. Stainback and W. M. Mayo, both of Somerville, for defendant in error.

OWEN, J. J. L. Mayo, the plaintiff below, recovered a judgment for the value of twenty-two bales of cotton damaged by fire at Somerville, Tennessee, the 21st day of March, 1930. The cotton was located on the defendant railway's freight platform at the time it caught on fire. The defendant seasonably filed a motion for a trial which was overruled. prayed and perfected an appeal, and has assigned seven errors. Briefly stated, plaintiff's declaration contained four counts.

By the first count, it was insisted that the defendant was liable as a common carrier, that it had received the twenty-two bales of cotton for shipment.

By the second count, it was insisted that the defendant was liable as a warehouse man or bailee for hire. The consideration for the bailee being the promise by the plaintiff to ship this cotton over defendant's railway line.

The third count was based on the negligence of the defendant causing said fire to plaintiff's cotton by sparks emitted from defendant's locomotive.

By the fourth count, it was insisted that the plaintiff had been invited to place said cotton upon defendant's platform, and that the railway company was grossly negligent in allowing said cotton to burn—it being insisted that the company failed to use such care and precaution to prevent said fire and to extinguish same; that the defendant company was grossly negligent in having no water barrels on said platform with water in them; that it had no buckets on said platform which might be used in extinguishing said fire; that it had no hydrant near said platform. The hydrant near by was in the stock pen, and through the gross negligence of said company this hydrant was so disconnected that no water could be obtained for one hour; that had water been available said fire could have been quenched before complainant's cotton was damaged; that the defendant's agents and servants were grossly negligent and incompetent in attempting to quench said fire; that said servants and agents rolled said cotton off of said platform and scattering said cotton over the ground, rendering it impossible for the fire department to quench the fire in said cotton when said department arrived upon the scene.

The defendant filed ten pleas to this declaration. The substance of said pleas were:

(1) Not guilty.

(2) Denying any promise to carry or to keep said cotton until same was shipped.

(3) The defendant pleaded that it had filed with the Public Utilities Commission of Tennessee and the Interstate Commerce Commission, a tariff rule, which provided as follows:

Cotton shippers are forbidden to place cotton on the platforms or premises of this railroad until forwarding directions have been furnished and cotton accepted by this railroad for shipment.

(4) And further pleads that for more than ten years its rule and custom has been not to allow any person or prospective shipper to place cotton on its platform in Somerville or its platforms at any other place along its line, with any shipping directions, unless at the time of its placing, to shipper, and entering into a written agreement, releasing the defendant. A copy of this release was set out in said special pleas.

The plaintiff filed replications to these pleas, setting forth that by an implied contract, and by conventional arrangements, and mutual understanding, there was a contract to carry and keep safely as a warehouseman. Also that the rules mentioned in the pleas, as to release of liability, and of requiring shipping directions at the time cotton was placed on the railroad platform, had been abrogated, waived and violated by the railway, and that by usage and custom, conventional arrangement, and mutual understanding, the cotton in

question, was placed at a designated place, and in a manner mutually understood to be delivery, and that the damage complained of, occurred after receipt of said cotton, whether received by the railroad as a common carrier and warehouseman, or simply placed there upon the invitation of the railroad company, and that the negligence of the railroad company, after receipt of said cotton, was the proximate cause of the damage complained of.

A number of witnesses testified, and at the conclusion of all the evidence the defendant entered a motion for a directed verdict; this was sustained as to the first and third counts of the declaration and overruled as to the second and fourth counts, the railway company being responsible as a common carrier and as to negligence of its engine setting the cotton on fire from sparks emitted by the locomotive was eliminated. The case then went to the jury on the second and fourth counts of the declaration. That is, the second count, which alleged that the cotton by a conventional arrangement and mutual understanding, was placed upon the platform, with an implied agreement and understanding that it was to be shipped over the lines of said railway, and the freight charges for said shipment constituted the consideration; and the fourth count which alleged that the cotton was damaged by fire by the gross negligence of defendant's servants and agents. The acts of negligence were specifically stated as heretofore quoted from the fourth count of said declaration.

We will group these seven assignments into three groups; first, second and third assignments being group number one, insisting:

(1) That the Court should have directed a verdict in favor of the defendant.

(2) There is no evidence to support the verdict. The third assignment is that the preponderance of the evidence is against the verdict; this assignment is overruled because this Court, in jury trials, does not weigh the evidence to ascertain where the preponderance lies. The first two assignments raise the question, "is there any material evidence to support this verdict?"

Group two complains of errors in the Court's charge, or in refusing certain special requests. Assignments four and five set out lengthy excerpts from the Court's charge where it insisted that the Court erred. By the 6th assignment it is insisted that the Court erred in refusing nine special requests offered by the defendant, and the 7th assignment complains of the Court erring in permitting the plaintiff to testify as to any agreement or understanding with defendant's local or station agent. None of the assignments of the defendant, except the assignment in group number one, comply with the rules of this Court.

We are not referred to any page of the transcript in the assignments where it is complained that the Court erred in its charge to the jury, or erred in refusing to give the special requests set out, or in complaining of the testimony of the plaintiff admitted. In counsel's brief for the defendant, they refer to the motion for a new trial, giving the page where the motion for a new trial may be found, which is in the first part of the transcript, but this is not a sufficient compliance with the rules of this Court or the rules of the Supreme Court, governing the assignments of error. Our rules are published in every volume of published opinions of this Court and in Volume 151, page 815, Rule 11 of the Supreme Court Reports.

Learned counsel for the defendant as to all these assignments based on the Court's charge and complaining of certain testimony of the plaintiff say that these assignments should be sustained. Learned counsel for the plaintiff answered the argument of defendant's counsel by saying, that it was not in error to refuse the special requests; that all the special requests offered were in substance charged in the general charge, or that they are not a correct statement of the law applicable to this case.

It appears that there were eleven requests offered at the conclusion of the Court's charge, but only nine of these were copied in the motion for a new trial, which motion for a new trial is copied in the assignments of error. The question to be determined is whether or not there is any material evidence to sustain this verdict based upon the second and fourth counts of the declaration.

On March 20, 1930, the plaintiff purchased the twenty-two bales· of cotton, involved in this law suit, from a farmer who delivered it in Somerville the next day. It was placed on the defendant's cotton platform by Mr. Ray who had sold the cotton to plaintiff. This platform was the usual place or warehouse that defendant owned and operated for the purpose of receiving cotton for shipment. There was a side track of defendant's railroad passing along the side of the platform so that the cotton could be loaded from the platform into railway cars. The public scales for weighing bales of cotton were located on this platform. Fayette County employed a County weigher who weighed cotton for all growers and buyers that was shipped from defendant's platform. The seller of the cotton, Mr. Ray, delivered it to the platform for plaintiff about 11 or 12 o'clock, during the day of March 21st. The cotton was for shipment over the defendant's railroad, and it was placed at the designated place for the receipt of cotton intended for shipment by the defendant railroad. It was the custom of a number of cotton buyers and shippers and the defendant railroad to have the cotton of the buyers deposited on this platform for shipment, and the bills of lading were obtained from the station agent that night or the next day. It was

the understanding and implied agreement that all the cotton deposited on said platform was to be shipped by said defendant railroad. The plaintiff followed the usual custom in depositing his cotton on the platform and obtaining a bill of lading after the day's purchases were over, either that night or the next day. This same custom has been followed by all the cotton buyers at Somerville for a long period of time. The plaintiff went to Memphis the afternoon of March 21st, and sold the twenty-two bales of cotton, to be shipped to some cotton mills in Alabama. He returned with shipping tags and shipping instructions. Before he reached Somerville the fire had occurred. The cotton caught on fire about 5:30 in the afternoon.

It appears that the agents of defendant's railroad had a meeting in Union City, March 16, 1930, and a rule of the company was promulgated at this meeting, requiring all shippers of cotton to sign a release and to save harmless the defendant railroad from any and all liability from loss and damages to cotton while stored on the premises of the defendant railroad. Plaintiff's contention is that the knowledge of this rule had not been brought to his attention at the date of the fire, and the plaintiff is corroborated as to this situation by other cotton buyers who ship cotton from Somerville.

Mr. Morrison, the defendant's agent, testified that he tried to locate the plaintiff after the cotton had been deposited on the platform, to get the plaintiff to sign a release, and he learned that the plaintiff had gone to Memphis. There is some contradiction by the employee of plaintiff, who had charge of plaintiff's office, as to the agent's request, and it appears that there were two other shippers of cotton in Somerville, who had cotton on defendant's platform the day of the fire, and the agent did not request either one of these to sign a release.

We find as a fact that the defendant had solicited the plaintiff to ship his cotton over defendant's railroad, and to ship over defendant's railroad the plaintiff had to place his cotton, intended for shipment, on the designated platform, which was the platform that burned.

We further find that the railroad and the plaintiff, by a mutual understanding and custom, issued bills of lading at the close of the day's receipts of cotton, sometime during that night or the next day, and plaintiff's cotton, in the instant case, had been received by the defendant as a warehouseman and the railroad expected to charge customary freight rates for the shipment of said cotton.

It appears from the testimony of the cotton buyers of Somerville that they usually procured bills of lading for the day's purchases sometime after night or the next day. The defendant railroad company had the following rules for handling cotton:

(a) All agents must see that a sufficient number of barrels and buckets, filled with water, and two pike poles are placed on each cotton platform, convenient for immediate use in case of fire.

(b) Agents must see that no one is allowed to smoke on or about the platforms or warehouses on which cotton is kept.

(j) Agents must not receipt for cotton delivered at their station after five o'clock, P. M., until the following morning, this being necessary in order that they may have daylight in which to do their checking and rendering unnecessary the use of lamps about cotton.

As to the defendant being negligent, it appears that when this fire was first discovered there was a small blaze between two bales of cotton. Mr. Ed Harvey, who operated a sawmill near the platform, testified that when he discovered the small blaze and rushed to the platform there were no buckets or any bucket whereby water could be dashed on the small blaze; that there were four or five empty barrels that should have contained water on the platform and one barrel that was about half filled. The defendant had a hydrant in a stock pen near by, but this hydrant had been cut off. Defendant's agent had a key, but the station was 150 or 250 yards from the platform. The agent was delayed in finding the key.

We find that if the railroad had had buckets and water on the platform, the fire could have been readily extinguished.

It appears that about two-thirds value of the twenty-two bales of cotton was salvaged after it caught on fire. We find evidence to sustain the acts of negligence alleged in the declaration.

While the defendant relies on certain rules forbidding cotton shippers to place cotton, intended for shipment, on premises of the defendant railroad until forwarding directions have been furnished and cotton accepted by defendant railroad for shipment, the Court in its charge properly instructed the jury as to this release or rule relied on. The defendant had relied on these rules in special pleas, as follows: "The plaintiff, by replication, says that the defendant on this occasion and frequently before, as to the plaintiff and others, waived, abrogated and by its agents and servants violated the rule mentioned in the plea, and waived the release set out in the plea, and the rule and the release were waived on this occasion, and by conventional arrangement and mutual understanding said cotton was placed upon said platform with the implied knowledge and consent of the defendant, and any inquiry or endeavor of defendant's agent after said cotton was placed upon said platform under the conventional arrangement and mutual understanding aforesaid was immaterial.

For replication to the tenth plea of defendant, being a plea to each and every count of the declaration, plaintiff says that on this occasion and frequently before as to this plaintiff and others, the de-

fendant waived, abrogated and by its agent and servants violated the rule and provisions set out in the plea, and by conventional arrangement and mutual understanding said cotton was placed upon said platform, and by said conventional arrangement and mutual understanding plaintiff was invited to place said cotton upon said platform on the date mentioned and in the manner same was done, and said cotton was upon said platform at the invitation and request of defendant at the time it was injured.

The pleas of the defendant, gentlemen of the jury, cast upon the plaintiff in the case what is called the burden of proof, and before you would be warranted in finding a verdict in favor of the plaintiff in this case it is incumbent upon the plaintiff to show by a preponderance of the evidence all of the material facts that are necessary to make out the plaintiff's case."

"The trial Judge further charged the jury on the question of negligence as follows:

"This lawsuit in based upon what is called negligence. Negligence is the want of ordinary care or caution in doing an act, or it is the failure or omission of a person to act as a person of ordinary prudence or care would do under the circumstances."

The defendant's contention in this case is that there was no invitation upon the part of the defendant railroad company to the plaintiff to place the cotton upon the platform; that there was a rule in existence on the part of the railroad company that no cotton should be placed upon the platform until shipping directions had been given, or unless the shipper in question had executed a release to the railroad company absolving the railroad company from liability so far as any damage to the cotton was concerned, and that the plaintiff in this case was aware of this rule, and in violation of the rule of the company that the plaintiff placed his cotton upon the platform, and that in doing so he became a trespasser in law and that the company owed him no duty except not to wilfully destroy his cotton. And if you find the facts to be that way, or if the evidence equally balances as to whether those facts are true or not, the plaintiff in the case could not recover and your verdict should be for the defendant.

Now the plaintiff in the case contends that while such a rule was in existence, or may have been in existence, that by custom and agreement between the parties, and by usage between the plaintiff in the case and other cotton buyers and cotton shippers in this community, that it had been agreed that the cotton might be placed upon the platform, and that after it was placed on the platform, at a subsequent time, shipping directions might be given. Now that is an affirmative matter with the plaintiff, and the burden of proof is upon

him to show that to the jury by a preponderance of the evidence. If the plaintiff has shown to the jury by a preponderance of the evidence that by mutual understanding and by agreement this cotton might be placed upon the platform and at a later time shipping directions might be given, bill of lading issued, then you should find for him upon that proposition. If he has failed to show that by a preponderance of the evidence, or if the evidence equally balances as to whether that is true or not, then upon that issue you should find for the defendant railroad company.''

While the assignments of error, as to the Court's charge and as to the special requests, do not comply with the rules of this Court in citing the pages\of the transcript, etc., for our own satisfaction and to see that justice, in our opinion, has been done both the plaintiff and the defendant in the trial below, we have read the Court's charge and all the special requests offered. We find the charge of the Court full and fair and without reversible error. The special requests were properly refused. We find evidence to sustain this verdict.

It results that we find no error in the judgment rendered in the lower Court. All the assignments of error are overruled and disallowed. The judgment of the lower Court is affirmed. The plaintiff will recover of the defendant the amount of the judgment rendered in the lower Court, with interest thereon from the date of its rendition and all the costs of the cause, including the cost of appeal for which execution will issue. Execution will issue against the defendant and its surety on appeal bond for the cost of the appeal.

Heiskell and Senter, JJ., concur.